It's a lot of paper, hopefully you won't need it all. Our next two cases are 18-12004 and 18-12007, Compulife Software Inc. v. Moses Newman, et al. Mr. Rothman, whenever you'd like, you can start. And if I could ask you for a bit of a roadmap because there are a lot of potential issues and you have a limited amount of time, which ones are you going to try to cover if we give you time? May it please the Court, Joel Rothman for Compulife, also here for Compulife is Robert Barney. To answer your Honor's question, there's three core issues. The first issue is actionable copying. The second issue is the duty of secrecy and continued use following acquisition. The third issue is the false advertising that deceived. Okay, go right ahead. And perhaps to assist, issue one, actionable copying, pages 32-34 of the order on appeal. Second issue, duty of secrecy, et cetera, pages 40-44. Third issue, pages 46-48. It's a large record. Understandably, your Honor, it appears a daunting task, but in fact it is not. And why is it not? Because the issues of fact here that the Court found support Compulife's claims, but more importantly, the defendants and the plaintiff stipulated to those facts that are necessary to determine this case in Compulife's favor in the pretrial stipulation at 177 in the record and in their answers to the complaint. The defendants admitted and stipulated to the lack of authorization to both copy and access, as well as to use and to misappropriate. That occurred in paragraphs 15-21 and 66-71 of the pretrial stip and in their answer. They also admitted that they falsely advertised NAAIP as their quote engine. So, why then did the District Court, the Honorable Magistrate Judge who retired a couple of days after the decision in this case, why did the District Court miss these undisputed facts? One reason, we believe, is because the trial did not focus on them we had stipulated to them. The contracts, the agreements that contained the restrictions in the licenses, those were in the record. They were stipulated. The fact that the defendants were not authorized, that was stipulated. We didn't spend time, therefore, explaining the license, issues of duty, issues of use, acquisition, or lack of authorization simply because they were in the record. They were referred to by several witnesses. It was understood and stipulated to. Let me ask you a question. You obviously know this case and Ms. Friedman does well, much better than we do. I'm trying to wrap my head around the many issues. Please. Let me see if I got this right. You had a direct copyright infringement claim and a derivative contributory copyright infringement claim, right? Yes. As I read the order that's being appealed, the findings of fact and conclusions of law, here's what the judge ruled with regards to the copying and the parameters of your 2010 HTML source code claim. The judge said that you, CompuLife, had, let's see if I get it right, had made no attempt to identify the protectable elements of the source code and failed to provide any basis for him to conclude that the copied portions were important and of sufficient quantity or duplicative for the fundamental structure or essence of the source code. As to that, were there pre-trial stipulations that took care of those deficiencies that the judge thought existed or not? Or that's a separate argument? As to the copying, the testimony was from Mr. Bruner and our expert Nancy Miracle, unrebutted. 192 in the record or the transcripts of the first morning continues at 193 in the record. Those, as well as her expert report, which was put in evidence and was not challenged, there was. But that, and I take your answer and I appreciate it, but so that alleged deficiency was not one that had been taken care of with the pre-trial stipulation. That was one that you presented affirmative testimony on. And you just think the district judges got it wrong, but that one was one that you met with affirmative evidence. We did. Beyond the pre-trial stipulation. We did. Okay. But if I can clarify, because I think this is important. In order for the defendants to commit trade secrets theft, to access my client's database, something the lower court found was protectable. In order to do that, actionable copying was necessary. They had to copy literally, not non-literally, literally copy my client's code. Literally copy the parameters from the code. Parameters that the court didn't say weren't entitled to copyright protection. They had to literally copy those parameters in order to commit the trade secrets theft. That was the testimony. So when the defendants acknowledge that they were not authorized to do what they did, and when the facts come in and show that what they did was access my client's trade secrets, they by definition copied my client's code to do that. This is where I'm confused. Okay. What I tried to do to begin understanding this case, and I have not gone into the record, so that's a caveat. Understandable, Your Honor. On the trade secrets claim, here are the reasons that I thought the judge gave for rejecting that claim along with the Florida Uniform Trade Secrets Act claim. Those were based, I think, on your transformational database, right? Yes. Okay. Here's what I think the district judge did. First, the alleged misappropriation in the so-called 42 case failed because the term life quotes did not constitute trade secrets. That has nothing to do with whether or not there was copying, right? That's correct. Okay. I've taken up your time, so I'm going to let you have extra time. Reason number two, as to the transformational database, CompuLife, this is the judge speaking, did not identify how there is a duty to maintain the secrecy of that database or on whom the duty was imposed. That's your duty issue but not a copying issue either, right? Correct. Okay. Number three, there is no continuing use after the effective date of the so-called DTSA, right? That's not a copying issue either, or is it? It is to the extent that the reason why they were able to continue using it is because they previously had copied. Okay. I understand that. And the last one was that there was allegedly no evidence of acquisition through what the judge called, quote-unquote, improper means. Is that a copying issue or not a copying issue or a hybrid as well? When you're talking about copying, you're referring to copyright infringement. No, I'm referring to copying in the way that you're using copying. Okay. They acquired, used, and accessed the database by step one, copy the code. The code tells you here's how you access the database. The code enables the accessing of the database. You're saying just sort of in the nature of things, if they accessed it, they copied it. Exactly. And then you're saying separately, and by the way, we put on some evidence about it. We put Bruner on and we put our expert on to kind of belt and suspenders or whatever. But you're saying technologically we didn't even really have to do that because the access was to copy it. The access absolutely involved copying. But because we're dealing with two different claims, we needed to be able to show the court the copying of the code that occurred, which we did in detail, verbatim. And then we explained how the copying that was done enabled the access of the trade secret. Was that clear? Good. As mud. Yep. As whale. No, it's helpful. We'll figure it out. It's going to take us diving into this record to be able to do that. Stephanie, could you please give him four more minutes, and we'll give Ms. Friedman the same amount of time extra. Thank you, Your Honor. I would like, because it would seem to me that there probably are other questions, but I would like to emphasize two really important issues here. And that is that, first, all of the facts that are necessary for Your Honors to consider in order to reverse, or not in the nature of disputed facts. There is no reason why Your Honors need to be concerned that this fact perhaps might mean something different from the other fact. We don't get into issues of discretion here. It is quite plainly and simply that the district court misapprehended those facts and their implication. I will give you an example. The district court said, essentially, that he didn't understand where the database was. Where is this database of quotes? And because it's not in, it's on the Term for Sale website, but it's not in this other software. He didn't understand, and the testimony is in the record to support this. The database is in the software, right? You create a piece of software that generates quotes. As Mr. Barney did, you create a database of rates for insurance and requirements. You put it in the software so that when you access the software, it generates the quote. So it's in the software itself. It's in both the software that was used in the first case to obtain the quotes to put on Mr. McSweeney's site, and it's in the software that's used on the Term for Sale website to display quotes there, and that was scraped. So that's really important. The second thing that's really important here is that, going back to a point I made earlier, there really is no issue regarding the defendant's lack of authority and the fact that the only way that they could have done what they did, and they did, both in the first case and the second case, was because they violated license agreements, they misrepresented who they were to my client, claiming to be working for Mr. McSweeney when they weren't. They obfuscated their way into my client's property, and everything that flows from that is what the result was that we challenged. And we didn't get honest answers in the beginning, but by the time we got to trial, we got the truth, and that truth supports each and every one of the plaintiff's claims. Thank you. I'll see you back here on rebuttal. You've saved your full time. Thank you very much, Mr. Rothman. Ms. Friedman. Yes. Good morning, Your Honor. It's Alison Friedman on behalf of the defendants. I disagree with Mr. Rothman's analysis, and if I just may briefly— Shocker. I know. If I just may briefly give you an idea of what this is, Mr. Barney has a business that has a life insurance quote engine that you can get depending on the kind of user, and I don't want to go into all the details because you'll see that in the record. But basically what this is, it's an insurance quote that you get on a screen that asks you four or five basic questions, takes that information, and sends it to a database, the transformative database. And that's what this is. Now, was there exact copying? The HTML that got the copyright was for the compilation. It was for the entire HTML. There is actually a case that I didn't cite in my brief, but it is an 11th Circuit case, InterVest Construction Inc. v. Canterbury Estate Homes, and in it it says it's the selection, the coordination, the arrangement of that compilation, which is what gives it its copyright, makes it copyrightable. Can I give you my layman's impression of this record, which is always not a good place to start? That your clients, having escaped liability, did a lot of stuff that was, eh, didn't look very good. Yes. I got that. They still prevailed at trial. Yes, so that they may have skirted close to the line of illegality and maybe just survived it. I don't believe that's true. Okay, you need to dissuade me. I will dissuade you. Okay, if you compare the two source codes, okay, they are remarkably different. One is 25 pages, one is 9 pages, and it's the compilation. It's the source code as a whole. It's not parts of this and that and that. It's the whole source code, and then when you look at the HTML code, computer code is not, there's not a lot of variety. It's like the phone book. It's not a lot of variety, but how you organize it, as in the Feist case, it's how you organize it is what makes it unique. There's terminology in there. There's instructions to the people installing it that doesn't necessarily go to the computer program, and there's the organization. So if you look at the HTML source code as a whole and you compare it to the one, out of 7,800 websites that NAAIP.org had at the time we went to trial, they only produced one that was similar. Mr. Barney spent his entire life for many, many, many months investigating this claim, and they only brought one? If I was going to prove that somebody was stealing my copyright to that extent, I'd have 7,800 versions of it. They only have one, which leads me to believe that the life insurance quote engine on other websites were not verbatim. It has to be verbatim. Then if you look at the one that they show, there's only two lines that are verbatim, two lines in the whole source code that are verbatim. They're also not in the same order. They're classes. So when you apply for an insurance quote, you need the person's sex, you need the person's age, you need the person's health, whether or not they smoke. That order is not the same in the two HTML codes. So can you help me just with one thing really quickly? So you were saying that they have to be verbatim. What is the substantial similarity bit? I thought that they had to be substantially similar but not necessarily verbatim. That applies for nonliteral copyright. But is that a live issue here as well? It's not. They say that they're talking about literal verbatim copying, and this HTML code was not literally verbatim. There were only two lines, and that's something that the district court pointed out. You should also be aware that the district court has computer background. He was actually in the best position to decide on this case. The other issue is that then you can look at fragmented copyright. So, okay, there's a portion. If you're, again, trying to – and I'm not a computer person. Okay. So take a code, a computer code that's developed by a programmer, and let's say you can break it up into chunks of 25%, 25%, 25%, and 25%. Yes. Someone in your client's position takes three-quarters of that code and copies it verbatim, changes the last 25%. Is there copyright infringement? I would argue based on the impact of that code that was taken because it also has to be significant to the code itself. Assume that it is significant, but it's not literal in the sense that it's not all of it. Well, literal is literal copying. Well, they did. In my hypothetical, they literally copied 75%. Again, there's still an analysis, and there's a number of 11th Circuit cases that I cite in my brief that there still has to be an analysis. Copying alone is not enough. You have to show that they're protected. And in computer program, not everything is protected, which is what I was just getting to. Some of it has to be the way it is in order to get the computer to work. So, for example, and this was testified to at trial, the inputs that you need in order to get a quote, as I was saying, sex, age, whether or not you're a smoker, that you need. So anybody that's going to create a life insurance quote engine has to ask those questions, and there has to be a submenu that lists the states. That can't be a copyright because that's a process. Let me find where it says that. The process, the way it works, an idea. The only thing that's protected is the expression, and that's the HTML code, because the HTML code is the programmer's way of expressing how to take these non-protectable elements, such as parameters that you need in order to get a quote for insurance, and put those into a menu that someone could come and check. And that's what they're alleging is done, but even that was not literal, and they didn't prove that any of those parameters were protectable. What they did was they gave an expert opinion that from somebody who did not research what needs to be done in the insurance agency, knew nothing about copyright, only said, oh, looking at this code, it looks original because Mr. Bruner read it. Nancy Miracle's entire report, and I have no doubt that she's an expert in the computer industry. I don't challenge that at all. But her report was all based on Bob Barney's testimony, and she compared seven of the 78,000 websites, and only used one as an example of literal copying of which there were only two lines. Now, I agree with you that my client definitely has some credibility issues, and maybe don't do things the way that some of us would handle ourselves, but just because of that doesn't mean they committed copyright infringement. And in this particular case, they did not. There is no literal verbatim copying, and there's no evidence that these parameters are protectable. How can they be protectable if every single competitor has to ask those same questions in order to give a quote? So what about his argument early on that he said the stipulation of access sort of in and of itself proves copying because the only way for this thing to work, the only way for them to get the access is to have the literal copied database? Okay, well, obviously it's not the only way because the website they rely on is not literal. It's not verbatim. And first of all, and you need it to be verbatim. Second of all, the access is an interesting thing. My client admits that CompuLife never gave them permission, never gave them access. But the testimony in the case is that two licensed users of CompuLife, MBM Quotes and I call them BAMDB, it's MSCC Corporation, were both licensed users. The testimony shows that, I mean, Mr. McSweeney came to the courtroom and testified, yes, I asked that this be put on the website, and I asked, I mean, they gave him access. There's no dispute about that. So to say to this court, well, we agree that they never were entitled to access is not true. We agree that Bob Barney did not give my client access. And they will also say, well, Jeremiah Coon, who gave the code initially to Mr. Rutstein, you know, it was under false pretenses. It wasn't under false pretenses. Mr. Rutstein says in the email, which is in the record, I'm a separate website than Brian McSweeney. I'm separate. And Mr. Coon did not catch on to that. He believed they were one in the same, so he sent the code over. That's not misrepresentation by my client. That's misinterpretation by Mr. Coon. So I would argue that a whole line, I mean, even in their brief, that whole line of, well, they didn't have access and they didn't have authority is not true. They just weren't given authority by Compulife. The other thing is the licensing agreement for Van D.B. was never produced. And, you know, I will actually concede that McSweeney, the court didn't find that it was produced, but based on the testimony, I walked out understanding that Mr. McSweeney had a licensing agreement. But Van D.B. is an interesting one because they only showed the licensing agreement from 2011, yet the testimony was that he had been a customer for at least 10 years, and this was October of 2017. So what was he governed by? Nothing was ever shown. So we don't even know that he was under a licensing agreement that prevented my client from taking that, that there was any duty even there. But what we do know is that my client didn't have a duty to Compulife that he knew of to protect anything. The other thing is my client never got access control. It got access to the database just like the public could. On the public, there's a public website that Compulife has that's termed for sale. I can go run quotes. Your honors can go run quotes. And it wasn't until September of 2016 that there was anything restricting the use of those quotes. So to say that my client took something that they weren't allowed to take is not true. Any one of us could have taken it. There was nothing restricting that. That didn't happen until after September of 2016. And that's what Nancy Miracle viewed when she did her report. She reviewed the site after when they added that information. So prior to that time, anyone could go and access. Interesting also to note is that there's 60 internet engine users who, like Van DB, who can put it on and someone can run sites through them. The use of those quotes are not restricted. Compulife does not require its own users to restrict the use of those quotes. Their own users to restrict the use of the other users of those quotes. So I would argue that the court completely got that right, that the quotes themselves, which is all my client ever got, the quotes themselves were not trade secrets because they were out in the public. You have to maintain secrecy. And that was not done here. Any questions? It's the quotes themselves but not the process by which the quotes are derived? Yeah, the quotes themselves. Not the process. It's the database of information. That's what was deemed a trade secret. So somewhere on a server or in the internet engine is this database of software. And the only way that my clients got access was through other people's entry. One, Van DB, which they had permission for, and the other one was Term for Sale, which was an open public site that anyone could pull quotes on. I went and pulled some quotes. I mean, it's open to everybody with no restriction. Now there's a restriction, but there wasn't back then. So my clients didn't steal any trade secrets. There was an open computer program that anyone could use. Anyone could go and run quotes. And that's why the court found, because it was public, it was not a trade secret. I would also address the false advertising. The district court never even got to the five elements of false advertising. He just found that it wasn't false advertising. I would agree with that, of course. But I would also say that part of the false advertising is the damage and the injury. At the end of the day, Compulife was only able to prove that 25 of its 1,800 customers, or I think at one point they might have had 2,000 customers, only 25 paying, not free trial customers, paying Compulife customers were also customers of NAIP. 25. That's it. So even if there was false advertising, and that's why I don't even want to address that, because even if there was, there were no damages to demonstrate how Compulife was injured in any way whatsoever. So I would argue that the district court correctly found there was no false advertising claim. I guess I'm going to use my additional time to focus again on the HTML code. If you are not a computer literate person, and I am not, I've learned a lot from this case, there is a case out of California that just explains what HTML code is. It's MediaNet, just for informational purposes. And what it explains is what I've said earlier, that the HTML code is only original in the way that it is. That's it. Once you start taking pieces out, it's not original. And I would also ask that your honors compare the two codes side to side. I have them, and one of them is nine pages, and one of them is 25 pages. And when you compare the portion that deals with the life insurance quote agent, they're different. Yes, the states are alphabetized, but I would argue there's really only one way to organize states, in alphabetical order. There are signed numbers instead of letters, and Nancy Miracle says, well, that's unique. I don't agree that that's unique. And she didn't say in there, besides her opinion that it's unique, why it's unique. There's only certain ways to program. And again, I would argue that these parameters that we are talking about are not protectable, because those are the parameters you need to get an insurance quote. And when you look at that, and you look at dates of births and all of that, that has to be the same. Then at the end of the day, when you look and you compare what's really competing, it's very de minimis. And I do cite case law in my brief that if it's de minimis, not 75% de minimis, then you don't have copyright infringement. Beyond that, you also have to look and see whether, you know, here it's not an issue of it being substantially similar. Here it's an issue of it being literally verbatim. Let me just review my notes. I was expecting more questions. Do you have the cite to that Medianet case? Yes, I do. Medianet, of course, is NetSeer. It's 156FSUP3D1052. Again, it's just good explanation. It's the best explanation I've seen of what HTML code is, and that's why I think it's useful. I'm not citing it for the proposition of the case itself. It's just the explanation I think is helpful if you're not computer literate. Okay. I have a question, and I think you may have answered it, but I just want to make sure. Okay. So I know that the appellants made a big issue about the district court seemingly ignoring pages 15 through 17 of Nancy Miracle's report. Yes. And as I went back and looked at that, I'm still saying to myself, okay, if I'm looking at it as if I'm the district court judge, does it really show a sufficient amount of the copying? Does it really establish copyright infringement? And I'm just not sure that it does from my limited perspective. I completely agree with you, but I agree with you. Is that because the issue of it needs to be completely verbatim? Is that why? Because she really seems to just pull out a few lines, if you will, and that's the basis for her opinion, and that seems to me to be does not establish copyright infringement. Well, I would agree with you that they're saying initially the literal verbatim copying, and it's a compilation of codes that you necessarily need. So that would be a thin copyright to begin with. Compilations are very thin. It's only about the organization. But in addition, as far as, you know, you can look at fragmented literal similarity, which is what this would be. It would be, okay, well, this parameter is the same. And when you look at that, it has to be sufficient to the copyright as a whole, as part of the compilation. I don't think she does that. I don't think she explains what these items do, and I don't think she explains why they're protected when, in fact, as I just said, in the insurance industry, you need those items. So even if she were to say that the class names, you know, sex instead of gender, or date of birth instead of birthday were, you know, their unique way because this is how they organized it, at the end of the day, is that really that important to the program? I mean, anyone could put gender. Anyone could put, you know, you only have two options, sex or gender. So I would argue they're not protectable, and nothing in here indicates that they are. She just lists out similarities but doesn't say why they're substantial to the copyright itself, why it's the meat of the copyright. I would argue that the meat of the copyright is the terms, the organization, and those items, and that's why I think the court completely got this case correct, even in spite of any issues he may have had with my clients. Thank you. All right, thank you very much. So somewhere along the way, wherever you want to, but will you help to clarify for me whether verbatim copying is required or substantial similarity is required and why? Right. So substantial similarity, in general, is sufficient for copyright infringement. We allege verbatim copying here. What's important to understand is that the, I forget how many pages she said our client's code is. Nine and 25. 925. The 25 includes the 9. That's the point. In a verbatim way? In a verbatim way. So there are nine pages, let's say between pages 8 and 8 plus 9, 17, and your nine that are like this. There's, what was copied from us was copied verbatim, right? That portion of our code which was copied was copied verbatim. Let me tell you where in the record you can see this. So first of all, the copyright certificate is at 193-18. The certificate is not registering a compilation, contrary to what counsel says. The claim of the author here is for source code, author created, quoting, text, HTML code. Not the organization and arrangement of other code. The text and the HTML code. That's the claim in the copyright certificate. The deposit material, 195-20, which lists out the code. The infringement, Madison, was the user, 193-14. That was what Ms. Miracle compared it to. Why didn't she compare it to all the NAIP websites? Because the testimony was, and this was unrebutted, they're all the same. Why are they all the same? They must all be the same to work. They will not work if they aren't all the same. Now, where can... If that's right, that they won't work unless they're exactly the same, and the 25 includes the 9 such that you can take pages 8-17 and map them on to the 9 and they look just the same, you can hold them up to the light and everything's the same, this would have been the easiest case of all time to prove, right? This trial should have taken like five minutes. I don't disagree with you. Well, I guess the thing that confuses me, though, is when you say, here's where you can find it in the record, and then you start pointing me to different record documents. Why isn't there just like you say, Judge, here's where you find the 25, here's where you find the 9, hold them up to the light, and you're done? Yeah, and that's what the testimony was. And I know. Why isn't it over at that point? I agree with you. I have to point you to different record documents because we had a trial, and one exhibit's here and one exhibit's here and one exhibit's there. All right. So, you know, it wasn't, and should this have been decided on summary judgment? Absolutely. We, because for reasons unknown, it was not clear to the district judge because he didn't read those pages of Ms. Miracle's testimony and because he didn't understand that what she was saying was there was verbatim copying. To all who are listening, record 227-1, 227-2, and 227-3. We showed on our motion for due trial to the district judge, which you can read what she said about that, we showed how. We had showed the district court comparisons of the code. We created for the district court what the magistrate judge had missed, and we showed here, Your Honor, because our magistrate judge didn't look at the two and because this being a bench trial and there being no copyright expert on the other side. None. Because the terms and the organization was copied identically. There was no need to go through this. Let me follow up now on Judge Newsom's question because I need help with the next portion. Great. Significance comes in in whether or not, and I may not be using the copyright terminology correctly, whether or not those nine pages were integral or significant to your protected expression. If they had copied three lines out of 25 pages, you would lose for what reason? Because the amount of copying was de minimis. Okay. Or to phrase it in the other evidentiary way, that you hadn't shown that whatever they copied was significant to an integral part of your work. That could be, or there are many other potential defenses under, you know, could have been a fair use, could have been this, could have just have been, you know, a non-actionable copying because it was an idea under section. No, assume that they took, they thought, man, this page of code is really good. Right. We're just going to take that one page of code and they took one out of your 25 pages. But to answer your question directly, the reason why it's infringement is because it wouldn't operate with the quote engine if you didn't copy it identically. Counsel referred to a list of states. Well, guess what? New York appears twice and not in the right order. Why? Because in the insurance business, there are two types of New Yorks. There's New York personal and New York business. And they're not in the same order. Everything in the code is organized and written in a way specifically to operate with my client's software. And if you don't copy it verbatim, the terms, the parameters, if you don't make those copies that way, then you cannot get the result that the defendants got, which is an operating quote engine. I'm stunned that the claim is being made here that there was authorization went on, you know, and, you know, it's not really false pretenses. When it was stipulated that there was none, when on cross-examination, Mr. Rutzin admitted not only that he had none and that he was acting without authorization, but also that he was committing a felony in doing so because he was violating his consent decree. Mr. Rothman, we've let you go on and take a little bit over your time. I apologize. No, no need to apologize. We thank you both very much for the presentation. It was very helpful. We'll try to figure it out. We're in recess until tomorrow morning. Thank you. Thank you, Your Honors.